UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KOONTZ COALITION,<br><br>               Plaintiff,<br><br>       v.<br><br>CITY OF SEATTLE,<br><br>               Defendant. | CASE NO. C14-0218JLR<br><br>ORDER ON MOTION FOR SUMMARY JUDGMENT |

## I.   INTRODUCTION

Before the court is Defendant City of Seattle's ("the City") motion for summary judgment. (Mot. (Dkt. # 17).) This is a land use case. Plaintiff Koontz Coalition ("the Coalition") is a group of downtown Seattle property owners challenging a land use ordinance recently passed by the City. (2d Am. Compl. (Dkt. # 13) ¶ 1.1; Weber Decl. (Dkt. # 18-1) Ex. A at 5.) The Coalition claims that the ordinance—which sets "in-lieu" fees that developers can pay to develop more building area than would be allowed under otherwise-applicable zoning regulations—violates both state and federal law. (2d Am.

ORDER- 1

Compl. ¶¶ 4.1-6.3.)  The Coalition asks for declaratory relief, injunctive relief, and attorney's fees.  (*See id.*)  The City argues that the Coalition's claims should be dismissed on summary judgment.  (*See* Mot.)  For the reasons described below, the court GRANTS summary judgment in the City's favor with respect to the Coalition's federal claims and REMANDS the remaining state law claims to King County Superior Court.

## II.  FACTUAL BACKGROUND

This case involves the City's so-called "downtown bonus program."  The downtown bonus program is a section of the City's land use code that allows developers to build more square footage on their property than otherwise permitted by extant zoning regulations.  (Freeman Decl. (Dkt. # 19) ¶ 2.)  If a developer wishes to construct a building that exceeds applicable square footage limitations, the developer can either provide a certain amount of affordable housing to the community or simply pay a fee— called a "fee in-lieu."  (*Id.*)  This additional square footage is called "bonus" development.  (*Id.*)  Developers are not required to participate in the bonus program; they always have the option of simply complying with existing zoning requirements, in which case they do not need to provide affordable housing or pay in-lieu fees.  (*Id.*)

The City recently raised its in-lieu fees in downtown Seattle.  (*Id.* ¶¶ 9-10.)  In May, 2013, the City rezoned the South Lake Union area of Seattle, instituting a bonus development program and setting in-lieu fees in South Lake Union that were higher than the then-existing in-lieu fees in the downtown core.  (*Id.* ¶ 7.)  On December 16, 2013, the City passed an ordinance, CB 124388 ("the Ordinance"), raising in-lieu fees in the

downtown core to be commensurate with the new rates established in South Lake Union. (*Id.* ¶¶ 9-10.)

The Coalition now challenges the Ordinance. The Coalition bases its challenge on a recent United States Supreme Court case from which the Coalition takes its name: *Koontz v. St. Johns Water Management District*, 133 S. Ct. 2586 (2013). In *Koontz*, the Supreme Court expanded the doctrine of unconstitutional conditions in the context of land use. This doctrine was initially articulated in *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987) and *Dolan v. City of Tigard*, 512 U.S. 374 (1994). *Nollan* and *Dolan* established that when a city imposes on the discretionary grant of a land use permit a condition that would amount to a taking if done outright, two requirements must be satisfied. First, an essential nexus must exist between the condition imposed and the legitimate state interests served by the building restriction from which the landowner seeks a variance. *See Nollan*, 483 U.S. at 837. Second, the nature and extent of the condition must be roughly proportional to the proposed development's expected impact on those state interests. *See Dolan*, 512 U.S. at 391. In *Koontz*, the Supreme Court made clear that these requirements apply even when the condition is a payment of money, and even when the exaction never actually occurs because the landowner refuses to agree to the condition and the city therefore denies the permit. *See Koontz*, 133 S. Ct. at 2603.

The Coalition argues that the Ordinance fails the "nexus" and "rough proportionality" test established in *Nollan* and *Dolan* and expanded upon in *Koontz*. (*See generally* 2d Am. Compl.) The Coalition also argues that the Ordinance violates the

Washington State Constitution and RCW § 82.02.020, under which cities in Washington cannot require fees of this nature unless it is "reasonably necessary as a direct result of the proposed development . . . ." RCW § 82.02.020; Wash. Const. art. I, §§ 3, 12, 16, art. XI, § 11; (2d Am. Compl. ¶¶ 4.1-4.4). The Coalition requests injunctive relief, attorney's fees, and a declaratory judgment invalidating the Ordinance. (2d Am. Compl. ¶¶ 4.1-6.3.)

To date, none of the Coalition's members have been required to comply with the Ordinance. The Coalition consists of three downtown property owners: (1) Second & Pike, LLC; (2) D, LLC; and (3) Seventh & Battery, LLC. (Weber Decl. at 5.) Second & Pike, LLC has obtained a development permit but will not be subject to the Ordinance because it has vested rights in a pre-Ordinance permit application. (Putnam Decl. (Dkt. # 21) ¶¶ 3-4.) D, LLC has submitted initial information to the City regarding development of its property but has not yet submitted a permit application that would subject it to the Ordinance. (*Id.* ¶ 5.) Seventh & Battery, LLC is merely "planning to develop" its property at some future date but also has not submitted a permit application and is therefore not yet subject to the ordinance. (2d Am. Compl. ¶ 3.3; Putnam Decl. ¶ 7.) In addition, it is not entirely clear how long the Ordinance will remain in effect. The City submits evidence that it is conducting an extensive review of the downtown bonus program that may result in significant legislative amendments in the near future. (*See, e.g.*, Freeman Decl. ¶¶ 8, 11-19, Exs. E, I.)

The City moves for summary judgment on numerous grounds. The City argues that the Coalition lacks standing to challenge the Ordinance because none of its members

have suffered any injury yet. (Mot. at 15-18.)  For related reasons, the City argues that the court should dismiss the dispute under either the jurisdictional or prudential prong of the ripeness doctrine. (*Id.* at 15-24.)  The City also advances several merits-based arguments, including that the Coalition does not allege a valid unconstitutional conditions claim, that the Coalition is prohibited from bringing a facial challenge to the ordinance instead of an as-applied challenge, and that the Coalition does not have an unconstitutional conditions claim because the City has provided a viable alternative to the in-lieu fees. (*Id.* at 11-15, 25-26.)  The City asks that the Coalition's complaint be dismissed in its entirety. (*See id.* at 5.)

### III.    ANALYSIS

**A.    Summary Judgment Standard**

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" if the evidence is such that reasonable persons could disagree about whether the facts claimed by the moving party are true. *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983).

> [T]he issue of material fact required . . . to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient

1   evidence supporting the claimed factual dispute be shown to require a jury
    or judge to resolve the parties' differing versions of the truth at trial.

*First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968).

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh evidence or make credibility determinations in analyzing a motion for summary judgment because these are "jury functions, not those of a judge." *Anderson*, 477 U.S. at 249-50.

The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets his or her burden, the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial." *Galen*, 477 F.3d at 658.

**B.    Ripeness**

The City argues that the Coalition's claims are not ripe for judicial determination. (Mot. at 15-24.) The City argues that the Coalition's claims can only be decided with reference to events that may or may not happen in the future—namely, a Coalition member being subject to the ordinance. (*Id.*) As such, the City argues that the court either lacks subject matter jurisdiction over the Coalition's claims or should dismiss the case under the prudential prong of the ripeness doctrine. (*Id.*) For the reasons discussed below, the court agrees with the City. However, for purposes of its ripeness

determination, the court focuses exclusively on the Coalition's federal law claims, ignoring its state law claims for the time being.

The contours of the ripeness doctrine are well defined. The "[r]ipeness doctrine is 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1211 (9th Cir. 2006) (en banc) (quoting *Nat'l Park Hospitality Ass'n v. DOI*, 538 U.S. 803, 808 (2003) (internal citation omitted)). The "central concern [of the ripeness doctrine] is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." 13 Charles Alan Wright, et al., *Federal Practice and Procedure* § 3532 (3d ed. 2011).

For purposes of Article III justiciability, an actual controversy exists within the meaning of the Declaratory Judgment Act when the dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). The dispute must be "real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts." *Id.* (internal quotation marks omitted). The basic question in each case is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance

of a declaratory judgment." *Id.* (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

In addition, the court must consider whether a case brought under the Declaratory Judgment Act is prudentially ripe. "Even where jurisdiction is present in the Article III sense, courts are obligated to dismiss a case when considerations of prudential ripeness are not satisfied." *Yahoo!*, 433 F.3d at 1211. "In determining whether a case satisfies prudential requirements for ripeness, [the court] consider[s] two factors: 'the fitness of the issues for judicial decision,' and 'the hardship to the parties of withholding court consideration.'" *Id.* (quoting *Abbott Labs v. Gardner*, 387 U.S. 136, 149 (1967)).

A careful examination of the federal law that applies to this case reveals that the case is not yet ripe for judicial determination. For simplicity, the court focuses its inquiry on prudential rather than jurisdictional ripeness, although the fundamental problem with the Coalition's federal claims is articulable with reference to either prong of the doctrine. The essential problem is that there is no federal claim that is ready for adjudication. Although the Coalition's federal claims may be ready for adjudication at some point in the future, at present they are not. The Coalition brings three different kinds of federal claims, all of which are unripe for different but related reasons.

1. *Nollan/Dolan/Koontz* Claims

First, the Coalition brings a set of unconstitutional conditions claims based on the Supreme Court's *Nollan/Dolan/Koontz* jurisprudence. (2d Am. Compl. ¶¶ 4.3, 5.1, 6.2, 6.3.) At their core, these claims assert that the City's Ordinance requiring in-lieu exactions as a condition of permit approval impermissibly burdens Coalition members'

Fifth and Fourteenth Amendment right to be free from unconstitutional takings.  (*See id.*; *see generally* 2d Am. Compl.)  In other words, they are claims based on the "nexus" and "rough proportionality" tests articulated in *Nollan* and *Dolan* and extended in *Koontz*.  (*See id.*); *Nollan*, 483 U.S. at 825; *Dolan*, 512 U.S. at 374; *Koontz*, 133 S. Ct. at 2603.

However, the *Nollan*/*Dolan*/*Koontz* jurisprudence requires applying these tests to specific facts and circumstances.  *See, e.g.*, *Garneau v. City of Seattle*, 147 F.3d 802, 807, 811 (9th Cir. 1998) (describing the relevant factual inquiries in unconstitutional exactions cases).  In other words, the court's task in applying *Nollan*, *Dolan*, and *Koontz* is to make fact-specific inquiries into the nexus and rough proportionality between a particular exaction and the impact of a specific use of land.  *See Garneau*, 147 F.3d at 807, 811.  This inquiry cannot be made in a vacuum.  *Id.*  Here, that means that because the exaction has not yet been made, no permit applications have yet been submitted, and no property development has yet been subjected to the Ordinance, there is nothing on which the court can base this fact-specific inquiry.  Indeed, for this precise reason, the law in the Ninth Circuit prohibits facial challenges based on the *Nollan* and *Dolan* jurisprudence.[1]  *Id.* at 811; *San Remo Hotel, L.P. v. San Fran. City and Cnty.*, 364 F.3d 1088, 1098 (9th Cir.

---

[1] The Coalition argues that this Ninth Circuit precedent does not survive *Koontz*.  (Resp. at 19-21.)  There is no basis for this assertion.  Nothing in *Koontz* addresses this issue or anything close to it, *see generally Koontz*, 133 S. Ct. at 2586, nor can the Coalition point to any post-*Koontz* cases from the Ninth Circuit or elsewhere that have reached this conclusion.  The Coalitions's attempt to patch together an argument out of tangentially-related quotations from *Koontz* is unpersuasive in light of the Ninth Circuit's reasoning in *Garneau*, which still applies even after *Koontz*.  (*See* Resp. at 19-21); *Garneau*, 147 F.3d at 811.  In any event, it is not strictly necessary in this case to decide whether a party can make a facial *Nollan*/*Dolan* challenge after *Koontz*.  The court merely raises the issue to illustrate the extent to which the Coalition's *Nollan*/*Dolan* claim is prudentially unripe.

2004); *see also Kamaole Pointe Dev. LP v. Cnty. of Maui*, 573 F. Supp. 2d 1354, 1370 (D. Haw. 2008); *Alto Eldorado P'ship v. Cnty. of Santa Fe*, 634 F.3d 1170, 1178-79 (10th Cir. 2011).

At present, the Coalition presents two different kinds of *Nollan*/*Dolan* claims, both of which the court finds to be prudentially unripe. First, the Coalition raises a facial *Nollan*/*Dolan* claim that is not ready for adjudication for the reasons explained in Ninth Circuit jurisprudence on facial challenges in this context. *See Garneau*, 147 F.3d at 811; *San Remo Hotel*, 364 F.3d at 1098. To the extent the Coalition presents such a claim, the court finds that it is not yet "fit for judicial decision." *See Yahoo!*, 433 F.3d at 1211. Second, the Coalition suggests that as-applied challenges will materialize as its members submit permit applications and/or revisions. (Resp. at 24-25.) In other words, they suggest that an as-applied challenge will ripen on some future date after the relevant "application" takes place. (*See id.*) However, ripeness requires a "definite and concrete dispute" that is "real and substantial . . . as distinguished from an opinion advising what the law would be upon a hypothetical set of facts." *MedImmune*, 549 U.S. at 126-27. In contrast, the Coalition's speculation about future as-applied challenges "involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *See* 13 Charles Alan Wright, et al., *Federal Practice and Procedure* § 3532 (3d ed. 2011). Thus, both of these categories of *Nollan*/*Dolan* claims are unfit for judicial determination at the present time.

### 2. Regulatory Takings Claim

For different reasons, the same is true of the Coalition's regulatory takings claim. The Coalition includes in its complaint the most cursory regulatory takings challenge possible—essentially inserting the words "regulatory taking" next to its *Nollan/Dolan* claims but supplying no further detail. (*See* 2d Am. Compl. ¶¶ 4.3, 6.1.) The Coalition fails to make any factual allegations related to this claim. (*See generally* 2d Am. Compl.) As such, the court has no way to determine the nature of the claim or the factual basis on which it rests. To the extent the words "regulatory taking" refer to a facial *Nollan/Dolan* claim or a similar facial claim grounded in the same theory (*see* Resp. at 30-31), the Coalition's claim is unripe for the reasons discussed above. To the extent "regulatory taking" refers to a run-of-the-mill regulatory takings claim, the court must apply the ripeness standard for takings claims set forth in *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985). Under that case, a takings claim is not ripe unless (1) the governmental entity charged with implementing the regulation has made a final decision regarding application of the regulation to the property at issue, and (2) the plaintiff has sought compensation for the taking through procedures the state has provided for doing so. *Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1035 (9th Cir. 2005).

This standard is not met here. The Coalition does not even assert that it has attempted to seek compensation through state procedures. (*See* 2d Am. Compl; *see* Resp. at 30-32.) Indeed, none of its members have even been subjected to the Ordinance yet, making it impossible for them to have done so. As such, the Coalition's ordinary

regulatory takings claim, to the extent it is even asserted, is not fit for judicial determination. *See Manufactured Home Communities*, 420 F.3d at 1035; *Yahoo!*, 433 F.3d at 1211.

### 3. Substantive Due Process Claim

The Coalition also nominally asserts a substantive due process claim. Again, the Coalition provides no detail regarding the nature of this claim, instead merely inserting the words "substantive due process" next to its *Nollan*/*Dolan* and regulatory takings claims. (*See* 2d Am. Compl. ¶¶ 4.3, 6.1.) There are no facts from which the court might glean the nature of or factual basis for the claim.

The same reasoning articulated above applies to this cursory claim as well. To the extent this is a facial claim, it is not ready for judicial determination under prudential ripeness considerations. Any facial substantive due process claim would have to be grounded on the same general theories and principles as a *Nollan*/*Dolan* claim. Indeed, no other theory—such as rational basis or some more advanced form of scrutiny—is even advanced in the pleadings on either a factual or argumentative level. (*See generally* 2d Am. Compl; Resp.) Moreover, any facial substantive due process claim would suffer from the problems detailed above with respect to the Coalition's *Nollan*/*Dolan* claims—in essence, this claim has been brought prematurely, and the court cannot fairly adjudicate it in a vacuum.

To the extent this is an as-applied claim, there has not yet been any application on which to base the claim. None of the Coalition's members have been subjected to the Ordinance yet. As explained above, this means there is no "definite and concrete

dispute" that is "real and substantial"; the court would instead be issuing "an opinion advising what the law would be upon a hypothetical set of facts." *MedImmune*, 549 U.S. at 126-27. Thus, under the prudential ripeness test, this claim is also not yet "fit for judicial decision." *See Yahoo!*, 433 F.3d at 1211.

4. <u>Hardship</u>

Under the prudential ripeness test, fitness for judicial determination is only the first factor the court considers. The second factor is "'the hardship to the parties of withholding court consideration.'" *Id.* It is evident here that the Coalition would face very little legally cognizable hardship as a result of the court dismissing its federal claims under the prudential prong of the ripeness doctrine.

In short, the Coalition has not shown undue hardship. The Coalition asserts that it would be subject to hardship because withholding review would provide "no more certainty for determining the fee's constitutionality than exists now." (Resp. at 29.) But this is exactly the point of the justiciability doctrines—it is not the court's role to provide certainty where there is no concrete dispute:

> [M]ere uncertainty as to the validity of a legal rule [does not] constitute[] hardship for purposes of the ripeness analysis. . . . If we were to follow [this] logic, courts would soon be overwhelmed with requests for what essentially would be advisory opinions because most business transactions could be priced more accurately if even a small portion of existing legal uncertainties were resolved.

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 811 (2003). The Coalition also asserts that it would suffer hardship because its members intend to apply for development permits at some unspecified future date and might suffer financial loss

ORDER- 13

therefrom. (Resp. at 29-30.) This also does not demonstrate undue hardship. "'To meet the hardship requirement, a litigant must show that withholding review would result in direct and immediate hardship and would entail more than possible financial loss.'" *US West Comm'ns v. MFS Intelenet, Inc.*, 199 F.3d 1112, 1118 (9th Cir. 1999) (quoting *Winter v. Cal. Med. Review, Inc.*, 900 F.2d 1322, 1325 (9th Cir. 1990)). The Coalition's speculative assertion of possible future financial loss does not meet the hardship requirement.

For the reasons described above, the court concludes under the prudential ripeness doctrine that the Coalition's federal law claims are not ready for judicial determination and should be dismissed.

**C.     Remand of State Law Claims to State Court**

All that remains are state law claims. The Coalition's state law claims appear to be similar to their federal claims: they are based on the same factual allegations and assert roughly the same theory that the City's in-lieu fee increase is an unconstitutional exaction. (2d Am. Compl. ¶¶ 4.1-4.4.) However, these claims are grounded not in the United States Constitution but in the Washington State Constitution and in a Washington statute—specifically, Washington State Constitution Article I, sections 3, 12, and 16, Article XI, section 11, and RCW § 82.02.020. (*Id.*) These claims are creatures of state law that, substantively, must be interpreted in accordance with state law. And although Washington unconstitutional exactions law may bear some resemblance to its federal counterpart, *see Trimen Dev. Co. v. King Cnty.*, 877 P.2d 187, 194 (Wash. 1994), the

ORDER- 14

court is not convinced that the analysis will be the same as it pertains to the delicate question of ripeness[2] or to other aspects of these claims.

The Coalition originally brought this case in King County Superior Court. Now that all questions of federal law have been dismissed, the court deems it appropriate to remand the Coalition's state law claims.

The decision whether to remand to state court is in the court's discretion. The court retains supplemental jurisdiction over the Coalition's state law claims even though all of its federal claims have now been dismissed. *Albingia Versicherungs A.G. v. Schenker Int'l Inc.*, 344 F.3d 931, 938-39 (9th Cir. 2003), *amended and superseded on other grounds by* 350 F.3d 916 (9th Cir. 2003). Nevertheless, the court has discretion to remand the state law claims to state court. *See* 28 U.S.C. § 1367(c) ("The district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). The United States Supreme Court has ruled that "a federal district court has discretion under the doctrine of pendent jurisdiction to remand a properly removed case to state court when all federal law claims in the action have been eliminated and only pendent state law claims remain." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 345 (1988).

Several considerations guide the court's decision whether to remand. In evaluating when it is inappropriate to exercise pendent jurisdiction, courts should

---

[2] Of course, ripeness is a jurisdictional requirement and would be determined with reference to federal law. Yet the ripeness inquiry varies with the nature of the claim being asserted. Therefore, to the extent the state law claims differ from the federal law claims, the ripeness analysis will differ as well.

ORDER- 15

consider "the values of judicial economy, convenience, fairness, and comity." *Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Carnegie-Mellon*, 484 U.S. at 350; *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001, *supplemented*, 121 F.3d 714 (9th Cir. 1997). The "doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie-Mellon*, 484 U.S. at 350.

### 1. Judicial Economy

The first factor is judicial economy. In the context of a motion to remand, judicial economy refers to the "investment of judicial energy" into a case or controversy. *Rosado v. Wyman*, 397 U.S. 397, 403 (1970); *see also Otto v. Heckler*, 802 F.2d 337, 338 (9th Cir. 1986). For example, courts may consider: (1) the amount of time that has been invested in analyzing the state claims, *Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 523 (9th Cir. 1989); *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 904 (9th Cir. 1983) ("The district court did not abuse its discretion in retaining jurisdiction to decide the state claims, because the record shows that the court and the litigants had expended considerable time on the pendent claims before the antitrust claims were dismissed."); (2) whether there have been hearings and/or arguments prior to the dismissal of the federal claims, *see Rosado*, 397 U.S. at 403-04; *Enercomp, Inc. v. McCorhill Pub., Inc.*, 873 F.2d 536, 546 (2d Cir. 1989) (district court retained jurisdiction after federal claims had been dismissed following 11 months of heated pretrial litigation); and (3) whether a party's "strategy may have been influenced by the fact that they are proceeding in federal court, and from the record it appears that it had not occurred to any party that the action

might be tossed into the state system." *Schneider v. TRW, Inc.*, 938 F.2d 986, 995 (9th Cir. 1991) ("Unless the district court was without power to hear the case, which is not the situation here, we ought not surprise the district court and parties with an unprecedented pronouncement that the case must go to state court, where nobody has ever wanted or expected it to be.").

Here, judicial economy favors remand, or at least does not weigh against it. This is the first substantive motion the parties have filed in this case, and it has not required the court or the parties to delve into the intricacies of the Coalition's state law claims. *See Mackey*, 867 F.2d at 523. No hearings or arguments to date have focused on the state law claims. *See Rosado*, 397 U.S. at 403-04. Further, neither party's strategy appears to heavily depend on litigating this case in federal court. *See Schneider*, 938 F.2d at 995. Indeed, the Coalition filed this case in King County Superior Court. (*See* Ver. of State Court Rec. (Dkt. # 2).) The case reached this court only when the City removed it. (*See* Notice of Rem. (Dkt. # 1).) As such, remand will neither surprise the parties nor undermine concerns of judicial economy.

2. Convenience

The second factor is convenience. Unfortunately, in the context of a motion to remand, the definition of "convenience [has] not [been] significantly advanced by federal adjudication." *Schneider*, 938 F.2d at 997 (dissenting opinion). Courts look to see if, in light of the record and accumulated federal proceedings, the state claims "may easily be carried across the street to the courtroom of a state superior court judge." *Id.* (quotations omitted). Nothing in the record indicates that remand will inconvenience either party.

As noted above, little has occurred in this litigation with respect the Coalition's state law claims. Consequently, this factor also favors, or at least does not weigh against, remand.

### 3. Fairness

The third factor is fairness. In the context of a motion to remand, fairness means not allowing a plaintiff to "take its chips off the table because it didn't like the dealer's, [court's], hand." *Albingia Versicherungs A.G.*, 344 F.3d at 939. When analyzing fairness in this context, courts have looked to whether "a surer-footed reading of state law would be available in state court," *Schneider*, 938 F.2d at 996 (granting motion to remand after concluding that the Ninth Circuit was split as to how to interpret California law); whether "the plaintiff has engaged in any manipulative tactics" in an effort to regain a state forum, *Carnegie-Mellon*, 484 U.S. at 357; and where the plaintiff originally filed the action. *Fletcher v. Solomon*, No. C06-5492, 2006 WL 3290399, at *3 (N.D. Cal. Nov. 13, 2006) (remanding action to state court, finding that "plaintiffs clearly desire a state forum, as they could have filed this action as an original matter in federal court but chose not to do so").

Like judicial economy and convenience, fairness arguably supports remand and at least does not weigh against it. The Coalition clearly prefers a state forum as it could have filed in federal court but chose state court instead. *See id.* Although the City just as clearly prefers a federal forum, the Coalition has not engaged in any manipulative tactics in an effort to achieve remand. *See Carnegie*, 484 U.S. at 357. In fact, remand has become an issue only because the court has dismissed the Coalition's federal claims in response to a motion that the Coalition opposed. (*See generally* Resp.) Furthermore,

ORDER- 18

there is no reason to doubt that Washington courts would provide a "sure-footed" reading of the state law issues in this case. *See Schneider*, 938 F.2d at 996.

4. <u>Comity</u>

The final factor is comity. "Comity, in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other." *Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895); BLACK'S LAW DICTIONARY (9th ed. 2009), comity. The Supreme Court held in *Gibbs* that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Gibbs*, 383 U.S. at 726.

Here, remand serves the interests of comity. The issues remaining in this case present important questions of state law that should be decided by a state court unless there is a good reason for this court to decide them. *See id.* Yet no such reason exists. The court has dismissed the Coalition's federal claims and found that judicial economy, convenience, and fairness do not favor keeping this case in federal court. At oral argument, the City urged the court not to remand in view of the court's ability to exercise pendent jurisdiction and apply the federal law of justiciability to the Coalition's state law claims. However, the court finds its own technical ability to retain the case insufficient to justify interfering with the interests of Washington state courts in deciding important issues of state law.

Taken together, the factors enunciated in *Gibbs* favor remanding this case to state court. Remand would promote considerations of comity and would not undermine the

values of judicial economy, convenience, and fairness.  Accordingly, the court remands the Coalition's state law claims to King County Superior Court.

## IV.   CONCLUSION

For the foregoing reasons, the court GRANTS the City's motion for summary judgment (Dkt. # 17) with respect to the Coalition's federal claims, DISMISSES those claims without prejudice, and REMANDS the remaining state law claims to King County Superior Court.  The court therefore ORDERS that:

1. Pursuant to 28 U.S.C. § 1367(c), all further proceedings in this case are REMANDED to the Superior Court for King County in the State of Washington,

2. The Clerk of the Court shall send copies of this order to all counsel of record for all parties,

3. Pursuant to 28 U.S.C. § 1447(c), the  Clerk of the Court shall mail a certified copy of this order to the Clerk of the Court for the Superior Court for King County, Washington,

4. The Clerk of the Court shall also transmit the record herein to the Clerk of the Court for the Superior Court for King County, Washington, and

5. The Clerk of the Court shall CLOSE this case.

Dated this 20th day of October, 2014.

_____
JAMES L. ROBART
United States District Judge

ORDER- 20